UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:   VAUGHAN COMPANY, REALTORS,                                  Case No. 10-10759

      Debtor.

---

JUDITH A. WAGNER, Chapter 11 Trustee
Of the bankruptcy estate of the Vaughan Company,
Realtors,

      Plaintiff,

v.                                                                   Adv. No. 12-1116

CRAIG FENTON,
CHERIE FENTON, and
NORMAN FENTON,

      Defendants.

## MEMORANDUM OPINION

THIS MATTER is before the Court on various motions for summary judgment filed by Plaintiff Judith Wagner, Chapter 11 Trustee of the bankruptcy estate of the Vaughan Company Realtors (the "Trustee").[1] *See* Docket Nos. 80-83, 85-86. The Trustee seeks judgment in her favor on her claims under 11 U.S.C. §§ 547 and 548 and New Mexico's version of the Uniform Fraudulent Transfer Act ("UFTA"), N.M.S.A. 1978 §§ 56-10-18(A)(1) and (2). The Defendants

---

[1] Hereinafter referred to as the "Motions for Summary Judgment," those documents include the: (a) Motion for Summary Judgment on [the Trustee's] Claims Under 11 U.S.C. § 547 Against Defendant Cherie Fenton (Docket No. 80); (b) Motion for Summary Judgment on [the Trustee's] Claims Under 11 U.S.C. § 547 Against Defendant Craig Fenton (Docket No. 81); (c) Motion for Summary Judgment on [the Trustee's] Claims Under 11 U.S.C. § 547 Against Defendant Norman Fenton (Docket No. 82); (d) Motion for Summary Judgment as to the Timing and Amount of the Transfers as to Craig Fenton (Docket No. 83); (e) Motion for Summary Judgment as to the Timing and Amount of the Transfers as to Norman Fenton (Docket No. 85); and (f) Motion for Summary Judgment as to the Timing and Amount of the Transfers as to Cherie Fenton (Docket No. 86).

1

did not respond to the Motions for Summary Judgment. After consideration of the Motions for Summary Judgment, the supporting papers, and being otherwise sufficiently informed, the Court finds that they should be granted, in part, and denied, in part, as described below.

SUMMARY JUDGMENT STANDARDS

Summary judgment, governed by Rule 56, Fed.R.Civ.P., will be granted when the movant demonstrates that there is no genuine dispute as to a material fact and that the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a), made applicable to adversary proceedings by Rule 7056, Fed.R.Bankr.P. "[A] party seeking summary judgment always bears the initial responsibility of informing the ... court of the basis for its motion, and ... [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, the Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Wolf v. Prudential Ins. Co. of America*, 50 F.3d 793, 796 (10th Cir. 1995) (quoting *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F2d 1238, 1241 (10th Cir. 1990)). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial" through affidavits or other supporting evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed .2d 202 (1986).

UNDISPUTED FACTS RELATING TO ALL DEFENDANTS

A.      Vaughan Company Realtors ("VCR") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on February 22, 2010 (the "Petition Date"). *See* Docket No. 1 in Case No. 10-10759.

2

B.	The Trustee commenced the above-captioned adversary proceeding on February 19, 2012. *See* Trustee's Complaint, Docket No. 1 in Adv. No. 12-1116.

## UNDISPUTED FACTS RELATING TO CRAIG FENTON

1.	Craig Fenton invested a total of $500,000 into VCR's promissory note program. *See* Trustee's Motion for Summary Judgment as to the Timing and Amount of the Transfers to Craig Fenton (Docket No. 83) (the "First Motion Relating to Craig Fenton"), ¶ 2; Stipulated Order Granting Plaintiff's Motion to Extend the Deadline for the Plaintiff to File Dispositive Motions on Unconsolidated Issues (Docket No. 75) (the "Order Relating to Craig Fenton"), ¶ 2(a); Affidavit of Edward Mazel (Docket No. 79) (the "Affidavit"), ¶ 10.

2.	Over the life of the investments, Craig Fenton received a total of $123,145.07 in payments from VCR. *See* First Motion Relating to Craig Fenton, ¶ 3; Order Relating to Craig Fenton, ¶ 2(b); Affidavit, ¶ 10.

3.	From February 22, 2006 through the Petition Date, Craig Fenton received $123,145.07 from VCR. *See* First Motion Relating to Craig Fenton, ¶ 4; Order Relating to Craig Fenton, ¶ 2(c); Affidavit, ¶ 10.

4.	From February 22, 2008 through the Petition Date, Craig Fenton received $121,862.88 from VCR. *See* First Motion Relating to Craig Fenton ¶ 5; Order Relating to Craig Fenton, ¶ 2(d); Affidavit, ¶ 10.

5.	Craig Fenton received $11,531.49 from VCR within the ninety days prior to the Petition Date. *See* Trustee's Motion for Summary Judgment on Her Claims Under 11 U.S.C. § 547 Against Defendant Craig Fenton (Docket No. 81) (the "Second Motion Relating to Craig Fenton"), ¶ 3; Order Relating to Craig Fenton, ¶ 2(e); Affidavit, ¶ 10.

6. All payments described in paragraphs 2 through 5 were made on account of Craig Fenton's investments in VCR's promissory note program. *See* First Motion Relating to Craig Fenton, ¶ 6; Order Relating to Craig Fenton, ¶ 2(b)-(e); Affidavit, ¶ 10.

7. From February 22, 2006 through February 22, 2010, Craig Fenton received $9,838.49 in fees from VCR in exchange for referring new investors to VCR's promissory note program. *See* First Motion Relating to Craig Fenton, ¶ 7; Order Relating to Craig Fenton, ¶ 2(f); Affidavit, ¶ 10.

## UNDISPUTED FACTS RELATING TO CHERIE FENTON

8. Cherie Fenton invested a total of $248,000 in VCR's promissory note program. *See* Trustee's Motion for Summary Judgment as to the Timing and Amount of the Transfers to Cherie Fenton (Docket No. 86) (the "First Motion Relating to Cherie Fenton"), ¶ 2; Stipulated Order Granting Plaintiff's Motion to Extend the Deadline for the Plaintiff to File Dispositive Motions on Unconsolidated Issues (Docket No. 76) (the "Order Relating to Cherie and Norman Fenton"), ¶ 2(g); Affidavit, ¶ 10.

9. Over the life of the investments, Cherie Fenton received a total of $77,229.12 in payments from VCR. *See* First Motion Relating to Cherie Fenton, ¶ 3; Order Relating to Cherie and Norman Fenton, ¶ 2(h); Affidavit, ¶ 10.

10. From February 22, 2006 through the Petition Date, Cherie Fenton received $77,229.12 from VCR. *See* First Motion Relating to Cherie Fenton, ¶ 4; Order Relating to Cherie and Norman Fenton, ¶ 2(i); Affidavit, ¶ 10.

11. From February 22, 2008 through the Petition Date, Cherie Fenton received $63,994.72 from VCR. *See* First Motion Relating to Cherie Fenton, ¶ 5; Order Relating to Cherie and Norman Fenton, ¶ 2(j); Affidavit, ¶ 10.

12. Cherie Fenton received $5,802.53 from VCR within the ninety days prior to the Petition Date. *See* Trustee's Motion for Summary Judgment on Her Claims Under 11 U.S.C. § 547 Against Defendant Cherie Fenton (Docket No. 80) (the "Second Motion Relating to Cherie Fenton"), ¶ 3; Order Relating to Cherie and Norman Fenton, ¶ 2(k); Affidavit, ¶ 10.

13. All payments described in paragraphs 9 through 12 were made on account of Cherie Fenton's investments in VCR's promissory note program. *See* First Motion Relating to Cherie Fenton, ¶ 6; Order Relating to Cherie and Norman Fenton, ¶ 2(h)-(k); Affidavit, ¶ 10.

UNDISPUTED FACTS RELATING TO NORMAN FENTON

14. Norman Fenton invested a total of $340,000 in VCR's promissory note program. *See* Trustee's Motion for Summary Judgment as to the Timing and Amount of the Transfers as to Norman Fenton (Docket No. 85) (the "First Motion Relating to Norman Fenton"), ¶ 2; Order Relating to Cherie and Norman Fenton, ¶ 2(a); Affidavit, ¶ 10.

15. Over the life of the investments, Norman Fenton received a total of $128,035.01 in payments from VCR. *See* First Motion Relating to Norman Fenton, ¶ 3; Order Relating to Cherie and Norman Fenton, ¶ 2(b); Affidavit, ¶ 10.

16. From February 22, 2006 through the Petition Date, Norman Fenton received $128,035.01 from VCR. *See* First Motion Relating to Norman Fenton, ¶ 4; Order Relating to Cherie and Norman Fenton, ¶ 2(c); Affidavit, ¶ 10.

17. From February 22, 2008 through the Petition Date, Norman Fenton received $87,574.73 from VCR. *See* First Motion Relating to Norman Fenton, ¶ 5; Order Relating to Cherie and Norman Fenton, ¶ 2(d); Affidavit, ¶ 10.

18. Norman Fenton received $7,955.06 from VCR within the ninety days prior to the Petition Date. *See* Trustee's Motion for Summary Judgment on Her Claims Under 11 U.S.C. §

547 Against Defendant Norman Fenton (Docket No. 82) (the "Second Motion Relating to Norman Fenton"), ¶ 3; Order Relating to Cherie and Norman Fenton, ¶ 2(e); Affidavit, ¶ 10.

19. All payments described in paragraphs 15 through 18 were made on account of Norman Fenton's investments in VCR's promissory note program. *See* First Motion Relating to Norman Fenton, ¶ 6; Order Relating to Cherie and Norman Fenton, ¶ 2(b)-(e); Affidavit, ¶ 10.

20. From February 22, 2006 through the Petition Date, Norman Fenton received $19,318.49 in fees from VCR in exchange for referring investors to VCR's promissory note program. *See* First Motion Relating to Norman Fenton, ¶ 7; Order Relating to Cherie and Norman Fenton, ¶ 2(f); Affidavit, ¶ 10.

## DISCUSSION

*I. Whether the Trustee Established the Prima Facie Elements of Her Actual Fraud Claims*

The Trustee seeks to establish the requisite elements of her actual fraud claims against each Defendant under 11 U.S.C. § 548(a)(1)(A) and N.M.S.A. 1978 § 56-10-18(A)(1). The elements of a fraudulent transfer action under 11 U.S.C. § 548(a)(1)(A) are: "(1) a transfer of an interest of the debtor in property; (2) made within two years before the debtor filed for bankruptcy; and (3) done with actual intent to hinder, delay, or defraud the debtor or any entity the debtor would become after the transfer." *See In re The 1031 Tax Group, LLC*, 439 B.R. 47, 68 (S.D.N.Y.Bankr.2010) (quoting the statute). The UFTA, N.M.S.A. § 56-10-19(A)(1), which contains similar elements, uses a four-year look-back period. *See* N.M.S.A.1978 § 56-10-23 (establishing a four year statute of limitations on pursuing fraudulent transfer actions under New Mexico law); *In re Strom*, 2013 WL 265071, *3 n. 5 (Bankr.D.N.M. 2013) ("The New Mexico UFTA has a four-year 'look-back' period.").

In its memorandum opinion entered October 23, 2013, the Court found that each transfer to the Defendants made within four years before the Petition Date: (1) constituted an interest of VCR in property; and (2) was made with the actual intent to defraud creditors. *See Wagner v. Oliva, et al,* 500 B.R. 778 (Bankr.D.N.M. 2013). The only remaining issue with respect to the Trustee's prima facie case is whether, and to what extent, the transfers actually occurred.

Here, the undisputed facts establish that the transfers to each Defendant occurred as follows: (1) Craig Fenton received $121,862.88 from VCR within two years before the Petition Date and $123,145.07 from VCR within four years before the Petition Date; (2) Cherie Fenton received $63,994.72 from VCR within two years before the Petition Date and $77,229.12 from VCR within four years before the Petition Date; and (3) Norman Fenton received $87,574.73 from VCR within two years before the Petition Date and $128,035.01 from VCR within four years before the Petition Date.

The Trustee has established the prima facie elements of her actual fraud claims, including the timing and amount of those transfers.

> II. *Whether the Trustee Established the Prima Facie Elements of Her State Law Constructive Fraud Claims Relating to Referral Fees*

Next, the Trustee seeks to recover the referral fees VCR paid to Defendants Craig Fenton and Norman Fenton under the UFTA, N.M.S.A.1978 § 56-10-18(A)(2).[2] To maintain a claim for constructive fraud under that statute, the plaintiff must establish that the debtor: (1) received less than reasonably equivalent value in exchange for the transfer; and (2) engaged in a transaction with unreasonably small capital or believed (or reasonably should have believed) it would incur debts beyond its ability to repay. N.M.S.A.1978 § 56-10-18(A)(2). The Court has already

---

[2] Although the Trustee asserted claims for constructive fraud under 11 U.S.C. § 548 in her complaint, she is not currently seeking a judgment on those claims.

7

determined that on the date of the transfers, VCR was insolvent and reasonably should have believed it would incur debts beyond its ability to pay. *See Oliva,* 500 B.R. at 793.

In the context of a Ponzi scheme, whether the debtor received reasonably equivalent value in exchange for a transfer depends on whether the investor had already recouped their initial investment at the time of the transfer. As the Court explained more fully in *Wagner v. Oliva,* to the extent the transfer at issue represents a return of principal, the Ponzi perpetrator receives reasonably equivalent value as a matter of law. *Id.*[3] However, to the extent the transfer constitutes something other than a return of the initial investment, the Ponzi perpetrator will typically only receive reasonably equivalent value for such payment if it was paid pursuant to a valid, enforceable contract. *Id.*[4]

Here, the referral fees were paid as compensation for recruiting new investors to the Ponzi scheme. The Trustee argues that Craig Fenton and Norman Fenton did not provide "value" to VCR because the referral fee arrangement is unenforceable. The Court addressed a similar argument in *Wagner v. Oliva* with respect to investors who received returns in excess of their initial investment (*i.e.* net winnings). Relying on both Tenth Circuit and New Mexico law, the Court concluded that enforcement of any contract between a Ponzi perpetrator and an

---

[3] *See also In re M & L Business Machine Co.,* 84 F.3d 1330, 1341 (10th Cir.1996) (explaining that "investors in fraudulent schemes ha[ve] claims for restitution and rescission against the debtor [Ponzi perpetrator] and that, by reducing the amount of these claims, the debtor's payments provided reasonably equivalent value. "); *In re Independent Clearing House Co.*, 77 B.R. 843, 857 (D.Utah 1987) (holding that the a Ponzi perpetrator received reasonably equivalent value as a matter of law for any transfers up to the amount of the investor's initial investment).

[4] *See also In re Hedged–Investments Associates, Inc.,* 84 F.3d 1286, 1289–1290 (10th Cir.1996) (suggesting that a transferor receives reasonably equivalent value for net winnings where the transferor and transferee have a valid, enforceable contract for the payment of returns); *In re Independent Clearing House Co.*, 77 B.R. 843, 857 (D.Utah 1987) ("[W]hether the debtors were indebted to a defendant for amounts in excess of his undertaking depends on whether or not the defendant had a valid, enforceable right under his contract with the debtors to receive payments of so-called earnings.").

8

investor for the payment of net winnings contravenes public policy. *Id.* The Court reasoned that net winners can only enforce their contractual rights at the expense of other innocent investors.

This reasoning also applies here. Enforcing a contract that enables the perpetrator of a Ponzi scheme to prey upon newly referred investors is even more repugnant to public policy than enforcing a contract to recover net winnings. Regardless of whether the person claiming referral fees had actual knowledge of the Ponzi scheme, such referrals only serve to facilitate the continued success of the fraud. *See Warfield v. Byron,* 436 F.3d 551, 560 (5th Cir. 2006) ("It takes cheek to contend that in exchange for the payments he received, the … Ponzi [perpetrator] benefited from [the broker's] efforts to extend the fraud by securing new investments."). As a matter of public policy, the Fentons had no enforceable claim against VCR to recover the referral fees at the time the payments were made. VCR's payments of referral fees to Norman Fenton and Craig Fenton were therefore not made in exchange for reasonably equivalent value. *See Klien v. Andres,* 2013 WL 4809260, *2 (D.Utah 2013) (rejecting the argument "that payments made as compensation for drawing in new investors to a Ponzi scheme constitute an exchange of reasonably equivalent value"); *In re Randy,* 189 B.R. 425, 441 (Bankr.N.D.Ill.1995) (holding that broker commissions paid pursuant to a Ponzi scheme were fraudulent transfers because "the contract that underlies the transaction is illegal, and therefore no value could have been given by the transferee to the debtor for the transfer").[5]

---

[5] *See also In re Ramirez Rodriguez,* 209 B.R. 424, 434 (Bankr.S.D.Tex. 1997) ("As a matter of law, the defendant gave no value to the debtors for the commissions attributable to investments made by others."); *In re Int'l Loan Network, Inc.*, 160 B.R. 1, 16 (Bankr.D.D.C.1993) (defendants who enticed new investors into Ponzi scheme, even if they had a contract, conferred no value since such services were predicated upon an illegal agreement); *cf Wing v. Dockstader,* 2012 WL 2020666, *2 (10th Cir. 2012) (holding unlicensed security broker could not enforce his right to referral fees where such right was predicated upon an illegal contract).

9

The Court concludes that the Trustee has established the prima facie elements of her claims to recover referral fees under the UFTA, N.M.S.A.1978 § 56-10-18(A)(2).

### III. Whether the Trustee Established the Prima Facie Elements of Her Preference Claims

Preferential transfers are governed by 11 U.S.C. § 547(b), which provides, in relevant part:

> [T]he trustee may avoid any transfer of an interest of the debtor in property-
>
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made-(A) on or within 90 days before the date of the filing of the petition;
> (5) that enables such creditor to receive more than such creditor would receive if-
> (A) the case were a case under chapter 7 of this title;
> (B) the transfer had not been made; and
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

In its memorandum opinion entered October 25, 2013, the Court found that - as to the Defendants - the Trustee had established all of the necessary elements under 11 U.S.C. § 547(b) except for the element relating to the timing of the transfers (*i.e.,* Section 547(b)(4)). *See Wagner v. Valencia, et al,* 2013 WL 5818766 (Bankr.D.N.M. 2013). By her Motions, she seeks to prove that the transfers at issue were made within 90 days before the Petition Date.

Here, the undisputed facts establish that VCR transferred the following amounts to the Defendants during the 90-day preference period: (1) Craig Fenton received $11,531.49; (2) Cherie Fenton received $5,802.53; and (3) Norman Fenton received $7,955.06. The Trustee has therefore established all of the prima facie elements of her claims under 11 U.S.C. § 547(b).

10

### IV. Whether the Trustee is Entitled to a Money Judgment

Finally, the Trustee seeks a money judgment with respect to all of the above-referenced claims. The Defendants did not respond to the Motions for Summary Judgment. In their answer to the complaint and the pretrial order, the Defendants assert various affirmative defenses, including the good faith defense under 11 U.S.C. § 548(c) and the stockbroker defense under 11 U.S.C. § 546(e).[6] *See* Docket Nos. 24 and 74. Neither party offered evidence upon which the Court can examine the viability of any of the defenses.

The Trustee contends that she is entitled to a money judgment because the Defendants failed to carry their burden with respect to each asserted defense. On a motion for summary judgment, the movant "bears the initial burden of demonstrating an absence of a genuine issue of material fact." *1-800 Contacts, Inc. v. Lens.com, Inc.,* 722 F.3d 1229, 1242 (10th Cir. 2013). With respect to an issue on which the movant does not bear the burden of proof at trial, the movant can satisfy that burden by: (1) presenting evidence to negate an essential element of the nonmovant's claim or defense: or (2) "indicating to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's case." *Id. See also Water Pik, Inc. v. Med-Systems, Inc.,* 726 F.3d 1136, 1144 (10th Cir. 2013) ("[I]f the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue."). Once movant has done one of these things,

---

[6] Paragraph 5 of the pretrial order provides that the Defendants are entitled to assert at trial "[a]ny and all defenses raised by the … defendants in their answer or set forth [in the pretrial order]." *See* Docket No. 74, p. 29. Although paragraph 3 of the pretrial order provides that all properly preserved affirmative defenses must be listed in paragraphs 2 or 4 of that order, that appears to be a mistake. The parties likely meant to reference paragraphs 3 or 5, titled "general nature of the claims and defenses" and "statement of legal issues presented," respectively. In any event, the Court finds that of all the defenses raised in the Defendants' answer have been preserved for trial.

"the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial." *1-800 Contacts,* 722 F.3d at 1242.

The Trustee's arguments (*i.e.* that the Defendants failed to make a sufficient showing with respect to several claimed defenses) would ordinarily trigger the Defendant's duty to come forward with evidence regarding their claims. Nevertheless, the Court, in exercising its discretion under Rule 56, finds that it is not appropriate to enter a money judgment at this time. *See* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 3d § 2728, pp. 525-26 (1998) (collecting cases for the proposition that even where the movant satisfies its initial burden, "the court has discretion to deny a Rule 56 motion … when it has any doubts as to the wisdom of terminating the action prior to a full trial").[7] It is not entirely clear that the Defendants were placed on sufficient notice that the Motions were directed at the affirmative defenses. For example, many of the Motions are captioned "Motion for Partial Summary Judgment as to the Timing and Amount of Transfers." The prayers for relief do not explicitly ask the Court for judgment on (or to overrule) the affirmative defenses. Finally, the Court must determine the validity of the Defendants' good faith defense in particular to fully decide this case on the merits. Though no facts before the Court relate to the affirmative defenses, a trial on the merits is set in roughly one week. Under these circumstances, the Court declines to enter a money judgment until the affirmative defenses have been examined at trial.

## CONCLUSION

Based on the foregoing, the Trustee's Motion for Summary Judgment will be granted, in part, and denied, in part. The Court will enter judgment in the Trustee's favor on the grounds

---

[7] In addition to denying the Motions, the Court is also entitled to give the Defendants an opportunity to offer evidence in support of the asserted defenses. *See* Fed.R.Civ.P. 56(e) ("If a party If a party fails to … properly address another party's assertion of fact as required by Rule 56(c), the court may … (1) give an opportunity to properly support or address the fact."). Because the trial setting is just around the corner, the Court declines to do so.

that she has established all prima facie elements of her claims under: (1) 11 U.S.C. § 548(a)(1)(A); (2) N.M.S.A. 1978 § 56-10-18(A)(1); (3) N.M.S.A. 1978 § 56-10-18(A)(2); and (4) 11 U.S.C. § 547(b). The Court will deny the Trustee's Motion to the extent she seeks a money judgment on those claims and will address all affirmative defenses at trial. The Court will enter a separate judgment consistent with this Memorandum Opinion.

ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: January 22, 2014

COPY TO:

James Askew, Edward Mazel, & Daniel White
Askew & Mazel, LLC
320 Gold Ave S.W.
Suite 300A
Albuquerque, NM 87102

Michael K Daniels
PO Box 1640
Albuquerque, NM 87103-1640

Craig Fenton
5300 Hayes Dr. NW
Albuquerque, NM 87120

13